**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**



FILED

OCT 1 7 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**ANDRE ALEXANDER,**

      **v.**                                **ACTION NO. 2:13cv213**

**SOUTHEASTERN WHOLESALE CORP.,**
**t/a Bay Auto Wholesale, and**

**JASON D. ADAMS, INC.,**
**t/a Autos by Choice,**

                  **Defendants.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter comes before the court on a Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion"). For the reasons stated herein, the Motion is **DENIED**.

### I. Factual and Procedural Background

On or about August 16, 2010, the Defendant, Jason D. Adams, Inc., trading as Autos By Choice ("Autos by Choice"), purchased a 2003 Dodge Ram pickup truck for approximately $6,000. 2d. Am. Compl. ¶ 5. At the time of this sale, the odometer incorrectly displayed 29,580 miles. 2d. Am. Compl. ¶ 8. In fact, the truck had over 100,000 miles on it. 2d. Am. Compl. ¶ 9.

On August 19, 2010, Autos by Choice sold the truck to Southeastern Wholesale Corp., trading as Bay Auto Wholesale ("Bay Auto"), for $9,100 and certified the odometer reading as correct to the best of its knowledge. 2d. Am. Compl. ¶ 14.

Bay Auto subsequently sold the truck to the Plaintiff, Andre Alexander ("Alexander"). On August 24, 2010, the Plaintiff made a down payment of $5,000 on the truck, and on August 27, 2010, the sale became final for a purchase price of $13,994.09. 2d. Am. Compl. ¶¶ 18, 21.

In late June or early July, 2011, the Plaintiff traded in the truck to Impex Auto Sales ("Impex"). Impex, however, discovered that the mileage displayed on the odometer was inaccurate and required the Plaintiff to take back the truck. 2d. Am. Compl. ¶ 26. The Plaintiff alleges this was the first time he discovered the odometer discrepancy. 2d. Am. Compl. ¶ 26. He attempted to rescind the transaction with Bay Auto but Bay Auto refused to cancel the sale. 2d. Am. Compl. ¶¶ 27-28.

The Plaintiff filed his original complaint on April 22, 2013, against Bay Auto and Autos by Choice. After the court granted two successive motions to amend, the Plaintiff's Second Amended Complaint ("Complaint") was filed on July 30, 2013, and is now the operative complaint in this case. ECF No. 44.[1] On August 20, 2013, the Defendant, Autos by Choice,[2]

---

[1] Bay Auto is no longer in business and has not filed a response to the operative Complaint, and default was entered by the Clerk as to Bay Auto on October 4, 2013. ECF No. 55.

[2] Throughout this opinion, reference to "the Defendant" is to Autos by Choice. See supra note 1.

filed the Motion to Dismiss. ECF No. 45. The Motion has been fully briefed, and is now ripe for review.

## II. Standard of Review

Federal Rule of Civil Procedure 8(a) provides, in pertinent part, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint need not have detailed factual allegations, but Rule 8 "requires more than labels and conclusions . . . . [A] formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Facial plausibility means that a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). It is, therefore, not enough for a plaintiff to allege facts demonstrating a "sheer possibility" or "mere[] consist[ency]" with unlawful conduct. Id. (citing Twombly, 550 U.S. at 557).

3

The Supreme Court, in Twombly and Iqbal, offered guidance to courts evaluating a motion to dismiss:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679. That is, the court accepts facts alleged in the complaint as true and views those facts in the light most favorable to the plaintiff. Venkatraman v. REI Sys., 417 F.3d 418, 420 (4th Cir. 2005). Overall, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

## III. Analysis

The Plaintiff has alleged four grounds for relief. Count I is a claim based on the federal Motor Vehicle Information and Cost Savings Act ("Odometer Act"). Count II is asserted only against Bay Auto, which is in default,[3] not against Autos by Choice. Count III is a claim based on the Virginia Consumer Protection Act ("VCPA"). Count IV is a Virginia common law fraud

---

[3] See supra note 1.

4

claim. The Defendant asserts that the pleadings for Counts I, III, and IV fail to state a claim. The court considers each argument in turn.

## A. Statute of Limitations

The Defendant first argues that the Plaintiff has not filed his claims under Counts I, III, and IV within the applicable limitations periods for claims based on the Odometer Act, the Virginia Consumer Protection Act, and common law fraud, respectively. Def.'s Mem. Supp. at 4, 10, 13.

### 1. Motor Vehicle Information and Cost Savings Act

The Odometer Act specifies that an "action must be brought not later than 2 years after the claim accrues." 49 U.S.C. § 32710(b). Both parties agree that because the cause of action is based on the fraudulent intent of the seller, the federal "discovery rule" applies.

> [W]here a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."

Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946) (quoting Bailey v. Glover, 88 U.S. 342 (1875)). The cause of action does not accrue until the time that the Plaintiff "discovered, or had

5

failed in reasonable diligence to discover, the alleged
deception." Id.

In this case, the Defendant first argues that the Plaintiff
should have known of the inaccuracy when he purchased the truck
from Bay Auto, the same as the Plaintiff alleges in the
Complaint that the Defendant should have known of the inaccuracy
when it purchased the truck. Def's Mem. Supp. at 5. By this
reasoning, the Defendant's constructive knowledge, as alleged in
the Complaint, would necessarily imply that the Plaintiff also
had constructive knowledge, causing the statute of limitations
to run on August 27, 2012, two years from the date he purchased
the truck from Bay Auto.

This equivalency is incorrect. A determination of what
constitutes "reasonable diligence" would necessarily take into
account the situation of the party in question. The Defendant is
a commercial seller of vehicles. 2d. Am. Compl. ¶¶ 3, 14. The
Plaintiff is not. 2d. Am. Compl. ¶ 1. This difference between
the Plaintiff and the Defendant means that what is reasonable to
expect the Defendant to have known is not necessarily reasonable
to expect the Plaintiff to have known. Viewing all facts in a
light most favorable to the Plaintiff does not lead the court to
conclude, at this juncture, that it was reasonable for the

6

Plaintiff, as an individual consumer, to have known of the odometer inaccuracy.[4]

The Defendant argues in the alternative that the statute of limitations period should start against all future plaintiffs in the chain of title when Bay Auto, the direct seller of the truck to the Plaintiff, first had "knowledge of, or duty to discover, the inaccuracy of the odometer . . . ." Def's Mem. Supp. at 5. The issue is whether the statute of limitations begins to run against a particular plaintiff when that plaintiff has knowledge of the inaccuracy, or whether it begins to run against all potential plaintiffs whenever any plaintiff has knowledge of a violation. This issue is a matter of first impression in this court.

The Defendant relies primarily on Byrne v. Autohaus on Edens, Inc., 488 F. Supp. 276, 281 (N.D. Ill. 1980). In Byrne, the court held that "the Act's statute of limitation begins to run as to a violation of the Act as against all potential plaintiffs at the time any person having standing to sue discovers or constructively discovers the violation, absent some act of fraudulent concealment." Id. To do otherwise, the court

---

[4] This conclusion at this early stage of the litigation on a motion to dismiss does not mean that factually, through discovery, the Defendant cannot establish an earlier date, when the Plaintiff either knew or should have known of the odometer inaccuracy, than he alleges. See 2d. Am. Compl. ¶ 26.

held, would "subject a violation of the Act to potential liability throughout the life of a vehicle." Id.

The court in Byrne based its reasoning on two legal theories. First, the court held that "a violation of the Act creates a single cause of action, not as many causes of action as there might be subsequent owners." Id. at 280. Second, the court held that "knowledge possessed by an owner of a motor vehicle as to a previous owner's possible violation of the Act should be imputed to all subsequent owners. . . ." Id. at 281. Under this theory, the statute of limitations begins to run when Bay Auto knew or should have known about the inaccuracy, which would preclude the Plaintiff from pursuing this cause of action.

The Plaintiff points to other courts that have declined to follow Byrne. Pl.'s Mem. Opp'n at 8-10. In John Watson Chevrolet, Inc. v. Willis, 890 F. Supp. 1004, 1010 (D. Utah 1995), the court examined Byrne and determined that it had "wrongly assumed that a statute of limitations is the same thing as a statute of repose,"[5] and that interpreting the statute that way would be "a ludicrous reading of the statute." 890 F. Supp. at 1010 n. 11. Moreover, the court refused to read an imputed knowledge standard onto the federal discovery rule. Id. at 1010.

---

[5] Statutes of limitations are measured from the violation of a legal right, but statutes of repose are measured from a date unrelated to the injury. John Watson, 890 F. Supp. at 1010 n. 11.

8

Similarly, in Carrasco v. Fiore Enterprises, 985 F. Supp. 931 (D. Ariz. 1997), the court held that "the cause of action belongs to each purchaser, who may bring a cause of action against all prior owners who violated the Act." 985 F. Supp. at 938. The court in that case examined the legislative history of the act, which described an intention to create "a national policy against odometer tampering and prevent consumers from being victimized by such abuses." Id. (citation omitted). The court also looked to 49 U.S.C. § 32710(a), the portion of the statute that provides for treble damages. Id. The legislative history and elevated damages provision led the court to conclude that "the purpose of the statute is to punish" violators, "rather than simply to provide a means of recovery of damages for a defrauded purchaser." Id.

The rule formulated in John Watson and Carrasco states that the statute of limitations "begins to run as against a potential plaintiff, only when that plaintiff, and not any other purchaser of the automobile, knows or reasonably should know that a violation of the Federal Act has occurred." John Watson, 890 F. Supp. at 1010; see Carrasco, 985 F. Supp. at 939. This court adopts the John Watson/Carrasco rule, because it best comports with the purposes of the statute. Carrasco, 985 F. Supp. at 938; John Watson, 890 F. Supp. at 1006. Moreover, to do otherwise

9

would, in the words of the court in Carrasco, "permit one wrongdoer, by discovering a fraud and failing to report it, to insulate another wrongdoer from liability by running the statute of limitations against him." Carrasco, 985 F. Supp. at 939.

Accordingly, viewing all facts in a light most favorable to the Plaintiff, his claim is not barred by the statute of limitations. The court accepts, at this juncture, the Plaintiff's allegation that he first discovered the inaccuracy in late June or early July of 2011. 2d. Am. Compl. ¶ 26.[6]

## 2. State Law Claims

The Defendant makes a similar argument with respect to the state law claims in Counts III and IV the Complaint. Def.'s Mem. Supp. at 10 and 13. The VCPA statute of limitations requires a cause of action to be brought within two years of when it accrues. Va. Code § 59.1-204.1. The same is true of any state common law fraud claim. Va. Code § 8.01-248. Either type of cause of action accrues when it is "discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code § 8.01-249(1). This is essentially the same requirement as the federal discovery rule. See supra Part III.A.1.

---

[6] See supra note 4.

The Defendant again asserts that the Plaintiff "is held to the same standard he alleges applies to the defendants, and his claim of fraud therefore accrued at the time of his purchase," which occurred more than two years before he filed his claim. Def.'s Mem. Supp. at 13-14. As this court addressed, supra Part III.A.1, this argument assumes an equivalency between what constitutes due diligence by the Plaintiff and the Defendant. Viewing all facts in a light most favorable to the Plaintiff, he filed his claim within two years of when he allegedly discovered the inaccuracy, so at this juncture his state law claims are not barred by the statute of limitations.

## B. Preemption

The Defendant next asserts that the Plaintiff's state law claims based on the VCPA and common law fraud are preempted by the Odometer Act under the concept of "obstacle preemption." Def.'s Mem. Supp. at 6.

There are three ways in which federal law may preempt state law: (1) by express language in a federal statute; (2) by implication from the "depth and breadth of a congressional scheme that occupies the legislative field"; or (3) by implication because of a conflict with a federal statute. Lorillard Tobacco Co. v. Reilly, 533 U.S. 525 (2001). The third type, "conflict preemption," occurs if either (1) compliance

11

with both the federal and state laws is "a physical impossibility," Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 31 (1996); or (2) the state law "stands as an obstacle to accomplishment and execution of the full objectives of Congress." Louisiana Pub. Serv. Comm'n v. F.C.C., 476 U.S. 355, 356 (1986); see Hines v. Davidowitz, 312 U.S. 52, 67 (1941). Under the second type of conflict preemption, known as "obstacle preemption," "it is not enough [to prevent preemption] to say that the ultimate goal of both federal and state law" is the same. Int'l Paper Co. v. Ouellette, 479 U.S. 481, 494 (1987). A state law can still be preempted if it "interferes with the methods by which the federal statute is designed" to meet its goal. Id.

Allowing a plaintiff to bring an action under the VCPA or common law fraud does not "stand as an obstacle to the accomplishment and execution of the full objectives of Congress." Louisiana Pub. Serv. Comm'n, 476 U.S. at 356. The stated objectives of Congress in enacting the Odometer Act are "(1) to prohibit tampering with motor vehicle odometers; and (2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." 49 U.S.C. § 32701(b). Allowing alternative causes of action based on a state consumer protection statute or common law fraud does not stand as an

12

obstacle to these objectives. On the contrary, it comports with and furthers them.

Additionally, the state laws do not interfere with "the methods by which the federal statute is designed" to meet its goal. Int'l Paper Co., 479 U.S. at 494. The examples cited by the Defendant involve state laws that directly conflict with the methods mandated by federal statutes. See, e.g., Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 103 (1992) (holding that a federal law restricts ways in which a state can promote worker safety since the federal statute requires that state regulations be approved by the Secretary of Labor); Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 874 (2000) (finding that a common law claim against a car manufacturer for failure to include an airbag in a vehicle was preempted because it directly conflicted with a Department of Transportation standard that did not require the airbag); see also Michigan Canners & Freezers Ass'n, Inc. v. Agric. Mktg. & Bargaining Bd., 467 U.S. 461, 477 (1984) (finding that although a Michigan law and a federal act shared the same goal of increasing producer's bargaining power, the method of establishing accredited associations was preempted by the federal statute). In contrast, by merely allowing for an alternate cause of action, the state laws at issue here do not interfere with the methods of the federal statute.

13

A separate question is whether the treble damages provision of the Odometer Act limits any potential award of punitive damages for fraud under state law. The Defendant argues that because the state law claims "(1) stem from the same conduct forming the basis of the Federal Odometer Act claim, and (2) posit alternative forms of punishment (such as punitive damages)" the state laws employ a different method of achieving the goals of the statute, and are, therefore, preempted by obstacle preemption. Def.'s Mem. Supp. at 9. The Defendant cites Perez v. Z Frank Oldsmobile, Inc., 223 F.3d 617 (7th Cir. 2000), where in dicta the court suggested it would find that the federal Odometer Act provision for treble damages limited any punitive damages based on common law fraud. Id. at 624.

It is not necessary for the court to decide at this time if the treble damages provision of the federal Odometer Act limits the amount of punitive damages that are allowed pursuant to any state claim for odometer-related fraud. See, e.g., Strohmaier v. Yemm Chevrolet, 211 F. Supp. 2d 1036, 1041 (N.D. Ill. 2001) ("The Perez decision concerns multiple remedies, not multiple claims. It is too early in the process to disallow plaintiffs to plead multiple claims based on the possibility of multiple recoveries"). The amount of damages available to a successful claimant does not affect the validity of the claim. Accordingly,

14

this court finds that the Plaintiff's claims based on the VCPA and common law fraud are not preempted by the Odometer Act.

### C. "Consumer Transaction" Under the VCPA

The VCPA makes it unlawful for a supplier to make certain misrepresentations "in connection with a consumer transaction." Va. Code § 59.1-200(A). The Defendant asserts that because it sold the truck to Bay Auto, and not directly to the Plaintiff, the sale was "a sale between suppliers," and "did not involve a consumer," so consequently it "cannot be a 'consumer transaction' as defined by the VCPA." Def.'s Mem. Supp. at 9. The VCPA defines a "consumer transaction" as the "advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes." Va. Code § 59.1-198. The statute defines "supplier" as "a seller, lessor or licensor who advertises, solicits or engages in consumer transactions, or a manufacturer, distributor or licensor who advertises and sells, leases or licenses goods or services to be resold, leased or sublicensed by other persons in consumer transactions." Id.

Virginia courts appear to be split on the issue of whether a transaction between suppliers is covered by the VCPA. The Defendant cites Eubank v. Ford Motor Credit Co., 54 Va. Cir. 170 (Va. Cir. Ct. 2000), in which a Virginia court held that the

15

VCPA did not cover transactions between two car dealers. Id. at 172 (finding that because the vehicle sale at issue was between merchants, rather than with a consumer, it was not a "consumer transaction"). Another Virginia court reached the opposite result by examining the text of the statute more closely. In Merriman v. Auto Excellence, Inc., 55 Va. Cir. 330, 331 (Va. Cir. Ct. 2001), the court wrote that the language "in connection with a consumer transaction" does not "limit protection only to those transactions that occur directly between a supplier and the ultimate consumer." Id. at 330. Moreover, the court emphasized the definition of "supplier," which explicitly includes "a manufacturer or distributor" who sells goods "to be resold . . . by other persons in consumer transactions," implying that transactions between suppliers were anticipated and included. Id.

Federal courts, in contrast, have been consistent in their interpretation of the VCPA, holding that a direct sale to a consumer is not required for the transaction to be covered by the VCPA. See, e.g., Branin v. TMC Enterprises, LLC, 832 F. Supp. 2d 646, 650 (W.D.Va. 2011)("The allegedly fraudulent acts only need be 'in connection with' a consumer transaction, which encompasses more than direct sales to consumers, as evidenced by the inclusion, in the definition of 'supplier,' of 'a

16

manufacturer, distributor or licensor who advertises and sells, leases or licenses goods or services to be resold, leased or sublicensed by other persons in consumer transactions'"); see also Harris v. Universal Ford, Inc., No. 3:00-cv-693, 2001 U.S. Dist. LEXIS 8913, at *3-4 (E.D.Va. Feb. 5, 2001); Blount v. Greenbrier Pontiac Oldsmobile - GMC Trucks Kia, Inc., No. 3:08-cv-622, 2009 WL 2431587, at *5-6 (E.D.Va. Aug. 7, 2009).

The plain language of the VCPA, and the majority of the relevant precedent, support the conclusion that the VCPA covers transactions like the one at issue in the present case. Accordingly, Count III of the Complaint, alleging a violation of the VCPA, has sufficiently stated a claim.

## D. Virginia Common Law

A party alleging fraud must prove "by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." State Farm Mut. Auto. Ins. Co. v. Remley, 270 Va. 209, 218 (2005)(quoting Prospect Development Co. v. Bershader, 258 Va. 75, 85 (1999)). The Defendant asserts that Count IV of the Complaint fails to state a claim for common law fraud because "there was no misrepresentation from Autos by

17

Choice to Alexander upon which Alexander could rely." Def.'s Mem. Supp. at 12.

In Virginia, a claim of fraud does not require direct contact or privity between the defendant and the plaintiff. Mortarino v. Consultant Engineering Services, 251 Va. 289, 295 (1996). A complaint must merely allege that the defendant knew or had reason to know that the plaintiff would rely on the misrepresentation. Id. at 296.

This rule has been applied to cases involving remote sellers of vehicles. See Branin v. TMC Enterprises, LLC, 832 F. Supp. 2d 646 (W.D.Va. 2011)("Plaintiff responds that [the remote seller] misrepresented the mileage with the knowledge that the misrepresentation would be repeated to induce a purchaser into believing the car had less mileage than it actually did. Plaintiff is correct that Virginia law recognizes a claim of actual fraud under these circumstances"); see also Eubank v. Ford Motor Credit Co., 54 Va. Cir. 170 (Va. Cir. Ct. 2000)("the Supreme Court of Virginia has allowed an amendment of a pleading to allege fraud against a defendant who made no direct representation to the plaintiff and with whom the plaintiff had no direct relationship. It is merely necessary that the elements of fraud be alleged"); Harris v. Universal Ford, Inc., No. 3:00-cv-693, 2001 U.S. Dist. LEXIS 8913, at *3-4 (E.D.Va. Feb. 5,

2001)(holding that no "special relationship" is required). In sum, in cases where a plaintiff is asserting a fraud claim against a remote seller, a pleading is sufficient to sustain a claim for fraud if it alleges that a remote seller knew or had reason to know that a subsequent purchaser would rely on the misrepresentation.

The Defendant relies on two Virginia cases that have dismissed claims for fraud against remote sellers of vehicles. In Blount, the court dismissed the plaintiff's fraud claim because the complaint "failed to allege with the requisite specificity" that the defendant intentionally or negligently made a false representation that was relied upon, and further did not identify any individual who perpetrated the alleged fraud. No. 3:08-cv-622, 2009 WL 2431587 at *6. In Samuels v. Fredericksburg Motorcars, 44 Va. Cir. 98 (Va. Cir. Ct. 1997), the court concluded that the remote seller "did not know or have reason to know" that the plaintiff would be a future purchaser of the car. Id.

This case is distinguishable from Blount and Samuels. Unlike the facts in those cases, here the Complaint specifically alleges that the Defendant had actual or constructive knowledge about (1) the inaccuracy, and (2) the likelihood that consumers would rely on that misrepresentation. 2d. Am. Compl. ¶ 31.

19

Accepting the facts alleged in the Complaint as true, and viewing those facts in the light most favorable to the Plaintiff, establish that the Complaint has not failed to state a claim for common law fraud.

### E. Ad Damnum Clause

Lastly, the Defendant argues that the Plaintiff's state law claims in Counts III and IV of the Complaint should be dismissed because they do not contain an ad damnum clause stating the amount of damages sought, as required by Virginia procedural rules. Def.'s Mem. Supp. at 14. The Plaintiff asserts that a specific ad damnum clause is not required by the Federal Rules of Civil Procedure. Pl.'s Mem. Opp'n at 17-18.

When there is conflict between state law and a Federal Rule of Civil Procedure, federal courts always apply the federal rule unless it is "inapplicable or invalid." Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 599 U.S. 393, 398 (2010); see also Burlington Northern R. Co. v. Woods, 480 U.S. 1, 4-5 (1987); Hanna v. Plumer, 380 U.S. 460, 469-71 (1965). Here, there is a valid Federal Rule of Civil Procedure directly on point. Rule 8(a)(3) states that a claim for relief must contain "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3). This demand does not have to be for a particular

amount, and can be made in general terms. See, e.g., Doe v. Siddig, 810 F. Supp. 2d 127, 137 (D.D.C. 2011) (finding no need to plead with particularity damages that would be expected to flow from the plaintiff's claims). Counts III and IV of the Complaint do request relief, in at least general terms, and therefore do not violate Rule 8(a)(3). 2d. Am. Compl. ¶ 44-45, 49.[7]

## IV. Conclusion

For the reasons set forth above, the Defendant's Motion to Dismiss is **DENIED**. The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Chief
United States District Judge

REBECCA BEACH SMITH
CHIEF UNITED STATES DISTRICT JUDGE

October 17 , 2013

---

[7] Moreover, a demand for relief is not part of a plaintiff's statement of the claim. See, e.g., Bontkowski v. Smith, 305 F.3d 757, 762 (7th Cir. 2002). Consequently, failure to meet the requirement of Rule 8(a)(3) is not grounds for a dismissal of the claim under Rule 12(b)(6). Id. Accordingly, even if the Complaint failed to meet the requirements of Rule 8(a)(3), which in fact it did not, it would not fail to state a claim.